

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 6, 2014

<u>By ECF</u>

The Honorable Ramon E. Reyes, Jr.
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    United States v. Michal Karas
<u>Docket No. 14-181</u>

Dear Judge Reyes:

      The fugitive, Michal Karas, was arrested on March 5, 2014 pursuant to a complaint and warrant issued by U.S. Magistrate Judge Azrack, seeking the fugitive's extradition to the Republic of Poland (hereinafter "Poland"), pursuant to an extradition treaty between Poland and the United States which entered into force on July 10, 1996 in accordance with Title 18, United States Code, § 3181.  Judge Azrack signed the warrant for arrest for extradition on February 26, 2014.

      Authorities in Poland seek the extradition of Karas in connection with 21 counts of sale of narcotics and theft in violation of Article 46, Section 1; Article 275, Sections 1 and 2; Article 291, Section 1; Article 11, Section 1; Article 59, Sections 1-3; and Article 4, Sections 1-4 of the Penal Code of the Republic of Poland.  A wanted notice was requested from Polish authorities on August 22, 2003 and was issued on August 26, 2008 in connection with these charges.

      The United States, in execution of its treaty responsibilities and acting at the request of Government of Poland, urges that the fugitive be held without bond pending the

hearing on the certification of the extradition pursuant to 18 U.S.C. 3184 et seq. and files this memorandum in support thereof.

I.  Applicable Law

The federal statute governing extradition procedures in the United States pursuant to treaties with other nations, 18 U.S.C. §§ 3184 et seq., does not provide for bail. Further, an extradition proceeding is not a criminal case.  See Kamrin v. United States, 725 F.2d 1225, 1227-1228 (9th Cir. 1984); Martin v. Warden, Atlanta Penitentiary, 993 F.2d 824, 829 (11th Cir. 1993). Consequently, the Bail Reform Act, Title 18 U.S.C. §§ 3141 et seq., and its criteria governing the allowance and the amount of bail in United States criminal cases do not apply in extradition matters.  The Bail Reform Act applies only to "offenses" against the United States that are triable in United States courts.  See 18 U.S.C. §§ 3141(a), 3142, 3156(a) (2).  Thus, Karas is not charged with an "offense" within the meaning of 18 U.S.C. § 3156.[1] Instead, he is charged in connection with sale of narcotic and theft against the Requesting State, Poland. See In re Sacirbegovic, 280 F. Supp 2d 81, 83 (S.D.N.Y. 2003); Borodin v. Ashcroft, 136 F. Supp. 2d 125 (E.D.N.Y. 2001).

Similarly, neither the Federal Rules of Criminal Procedure nor the Federal Rules of Evidence apply to international extradition proceedings.[2] Fed R. Crim. P. 1(a) (5) (A); Fed. R. Evid. 1101 (d) (3); See also,  Melia v. United States, 667 F.2d 300, 302 (2d Cir. 1981); Afanesjev v. Hurlburt, 418 F.3d 1159, 1164-65 (11th Cir. 2005); Bovio v. United States, 989 F.2d 255, 259 n.3 (7th Cir. 1993).

a.  A Strong Presumption Against Bail Governs In An International Extradition Proceeding

The overwhelming weight of authority supports the strong presumption against the granting of bail in international extradition cases.  Both the United States Supreme Court and the federal courts of appeals have long held that bail should be granted in only the most unusual of circumstances.

In the landmark case Wright v. Henkel, 190 U.S. 40 (1903), the Supreme Court affirmed the detention without bail of a fugitive sought by Great Britain for defrauding a corporation of which he was a director.  The United States argued in Wright that extradition courts were without power to allow bail because no statute provided for such

---

[1] The term "offense" for the purposes of Section 3141 is defined in 18 U.S.C. § 3156(a) (2) as "any criminal offense, other than an offense triable by court-martial, military commission. provost court, or other military tribunal, which is in violation of an Act of Congress and is triable in any court established by Act of Congress. . ."

[2] Although the issue before the Court is the fugitive's request for bail, it also should be noted that neither the prohibitions against hearsay, Simmons v. Braun, 627 F.2d 635, 636 (2d Cir. 1980), nor the Sixth Amendment's guarantee to a speedy trial, Jhirad v. Ferrandina, 536 F.2d 478, 485 n. 9 (2d Cir. 1976), cert. denied, 429 U.S. 833 (1976), reh. denied, 429 U.S. 988 (1976), apply to international extradition proceedings.

power.  Id. at 55.  The Court stated that it was unwilling to hold that the circuit courts do not possess power with respect to admitting fugitives to bail other than as specifically vested by statute, but cautioned that " . . . bail should not ordinarily be granted in cases of foreign extradition . . . ."  Id. at 63.

In establishing this presumption against bail, the Supreme Court in Wright explained that when a foreign government makes a proper request under a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted.  The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

Id. at 62.

The reasons for this presumption against bail in international extradition cases are clear and compelling.  First, it is necessary for the United States to meet its legal treaty obligations.  A person sought for extradition already is an international fugitive from justice; the fact of an impending extradition to a foreign country to face serious criminal charges, the outcome of which is uncertain, is itself a strong incentive to flee.

Further, the ability of the United States to deliver fugitives pursuant to extradition requests has significant international law implications.  The international legal system depends wholly upon the respect of its members for the obligations into which they freely enter.  When, as here, the Government of Poland meets the conditions of the treaty, the United States is obliged to deliver the fugitive.  It is important that the United States be regarded in the international community as a country that honors its agreements in order to be in a position to demand that other nations meet their reciprocal obligations to the United States.  Such reciprocity would be defeated if a fugitive flees after being released on bond.  See Wright, 190 U.S. at 62; see also U.S. v. Leitner, 784 F.2d 159, 160-61 (2d Cir. 1986) (the Government has an overriding foreign relations interest in complying with treaty obligations and producing extradited persons).

     b.  The Fugitive Must Establish "Special Circumstances" and Must Not Pose a Risk of Flight for the Court to Consider the Question of Bail

In light of the strong presumption against bail established in Wright, the federal courts have uniformly held that bail shall not be granted except under "special circumstances."  See United States v. Leitner, 784 F.2d at 160 (bail in extradition cases should be granted "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory"), (quoting In re Mitchell, 171 F. 289 (S.D.N.Y.

1909)(Hand, J.); Hu Yau-Leung v. Soscia, 649 F.2d 914, 920 (2d Cir. 1981), cert. denied 451 U.S. 971 (1981) (adopting special circumstances test and stating "that the standard for release on bail of persons involved in extradition proceedings is a more demanding standard than that for ordinary accused criminals awaiting trial"). Moreover, the burden is on the fugitive to establish the existence of special circumstances warranting the granting of bail. See Leitner, 784 F.2d at 160.

Notably, the courts have determined that certain circumstances are not "special" and do not justify the release of a fugitive during extradition proceedings. Foremost, the absence of flight risk is consistently held not to constitute a special circumstance. Rather, the absence of a risk of flight and a finding of special circumstances are each independent requirements for bail in an extradition case. Therefore, to qualify for bail, a fugitive is required to make a two-part showing that: (1) he or she is not a flight risk and (2) that "special circumstances" exist warranting the granting of bail. See e.g., United States v. Ramnath, 533 F. Supp. 2d 662, 665 (E.D. Tex. 2008); In re Extradition of Molnar, 182 F. Supp. 2d 682, 687 (N.D. Ill. 2002); In re Extradition of Nacif-Borge, 829 F.Supp. 1210, 1215 (D. Nev. 1993); In re Extradition of Chapman, 459 F.Supp.2d 1024, 1026-27 (D. Haw. 2006); In re Extradition of Santos, 473 F. Supp. 2d 1030, 1035-36 (C.D. Cal. 2006). The absence of flight risk is consistently held to be a requirement separate from the special circumstances test.

To illustrate, in Leitner, the fugitive was a United States citizen, who had been arrested in Israel and charged with acts of terrorism against Arabs. Israeli authorities freed Leitner on bail after he agreed to cooperate with them. After receiving death threats, Leitner fled to his home in the United States and lived openly under his own name for a year and a half. He attended law school, drove a taxi under his own name, and lived with or frequently visited his parents. Based upon the foregoing, the Magistrate Judge found that Leitner did not pose a flight risk. The Second Circuit, in affirming the district court's reversal of the grant of bail, held that the lack of flight risk was not a "special circumstance." 784 F.2d at 161. See also, Salerno v. United States, 878 F.2d 317, 318 (9th Cir. 1989) (flight risk "is not a criteria for release in an extradition case"); Matter of Russell, 805 F.2d 1215, 1216 (5th Cir.)("[b]eing a tolerable bail risk is not in and of itself a special circumstance"); United States v. Williams, 611 F.2d 914, 915 (1st Cir. 1979) ("even applicant's arguable acceptability as a tolerable bail risk" is not a special circumstance). Instead, absence of flight risk is an independent and additional condition that must be demonstrated to warrant bail. Similarly, findings regarding danger to a community both here and abroad would preclude bail, even in the face of arguably special circumstances. See In re Extradition of Gonzalez, 52 F.Supp.2d 725, 735 (W.D. La. 1999); Ramnath, 533 F. Supp. 2d at 665; Extradition of Molnar, 182 F. Supp. 2d at 687; Extradition of Nacif-Borge, 829 F.Supp. at 1215; Extradition of Santos, 473 F. Supp. 2d at 1035-36.

Assuming the fugitive is not a risk of flight and poses no danger to the community, the fugitive must make an affirmative showing of special circumstances. By way of example, courts have declined to find "special circumstances" based on: (1) the need

to consult with one's attorney and/or participate in pending litigation;[3] (2) the complexity of the pending litigation;[4] (3) health issues including discomfort, dietary needs, or associated health concerns while incarcerated;[5] (4) United States citizenship or pendency of naturalization proceedings;[6] (5) the availability of electronic monitoring;[7] (6) the fugitive's character, past conduct, and/or ties to the community;[8] (7) substantial likelihood of success against extradition or action in requesting country;[9] and (8) availability of bail for the same offense in the requesting country.[10]

       The fugitive in this case cannot demonstrate that he is not a flight risk or the required "special circumstances" that would justify his release on bail.  Accordingly, the government requests that his bail application be denied.

       Very truly yours,

       LORETTA E. LYNCH
       United States Attorney

By:    /s/_____

       Melody Wells
       Assistant U.S. Attorney
       (718) 254-6422

cc: Jan Rostal (by ECF and Email)

---

[3] See, e.g., In the Matter of Extradition of Smyth, 976 F.2d 1535 (9th Cir. 1992) ("The need to consult with counsel, gather evidence and confer with witnesses, although important, is not extraordinary; all incarcerated defendants need to do these things"); accord, Matter of Extradition of Russell, 805 F.2d 1215, 1217 (5th Cir. 1986).

[4] See, e.g., United States v. Tang Yee-Chun, 657 F. Supp. 1270, 1271-72 (S.D.N.Y. 1987)

[5] See In re Klein, 46 F.2d 85 (S.D.N.Y. 1930) (discomfort with confinement not a special circumstance).

[6] In re Extradition of Orozco, 268 F. Supp. 2d 1115, 1117 (D. Ariz. 2003).

[7] See Matter of Extradition of Rovelli, 977 F. Supp. 566, 569 (D. Conn. 1997); United States v. Hills, 765 F. Supp. 381, 389 (E.D. Mich. 1991).

[8] See Matter of Extradition of Sidali, 868 F. Supp. 656 (D.N.J. 1994) (rejecting "extraordinary character" based on employment, family ties, no prior record, and community respect as a special circumstance); In re Extradition of Valles, 36 F. Supp. 2d 1228, 1231 (S.D. Cal. 1998) (fugitive's past conduct and community ties used to assess flight risk).

[9] In re Sacirbegovic, 280 F. Supp. 2d 81, 88 (S.D.N.Y. 2003) (the probability of success against extradition is a subject reserved for the extradition hearing); In re Sidali, 868 F. Supp. 656, 658-59 (D.N.J. 1994) (probability of success against extradition "relate[s] to whether [the fugitive] should be extradited not whether he should be released on bail).

[10] Charlton v. Kelly, 229 U.S. 447, 462 (1913); Collins v. Loisel, 259 U.S. 309, 316-317 (1922).